UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Melvin JOHNSON, Jamal SCOTT, and
Armando TORRES; individually and on
behalf of all similarly situated individuals,

CIVIL CASE NO. 6:18-cv-06568

Plaintiffs,

**COMPLAINT**

-against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, GOVERNOR ANDREW
CUOMO, in his official capacity, ACTING
COMMISSIONER ANTHONY ANNUCCI,
in his official capacity, and THE STATE OF
NEW YORK,

Defendants.

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this action individually, and on behalf of all others similarly

situated, to challenge the acts and omissions of New York State Department of Corrections

("DOCCS") and Community Supervision, Governor Andrew Cuomo, Acting Commissioner

Anthony Annucci and, the State of New York for depriving the disabled inmates in Regional

Medical Units (RMUs) the right to equally participate in and benefit from prison programs,

services and activities.

2.      The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, and

Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, provide that qualified

inmates with disabilities have the right to equally participate in and benefit from prison

programs, services, and activities.

3.      DOCCS places inmates in RMUs when those inmates have medical conditions that

require more intensive care than can be provided in a general population setting.

4. Despite their disabilities, many RMU inmates wish to, and are able to, participate in prison programs, services and activities that are only available to inmates in the general population.

5. Inmates housed in RMUs have far fewer opportunities for participation in programming than inmates housed in the general population.

6. Defendants know that inmates in RMUs do not equally benefit from prison programs, services and activities.

7. As a results of Defendants' actions, inmates in RMUs are denied the opportunity to participate and/or benefit from DOCCS services and programs for which they are otherwise eligible solely on the basis of their disability.

8. With this lawsuit, Plaintiffs seek declaratory and injunctive relief to redress the violation of their rights pursuant to Title II of the ADA and Section 504.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant 28 U.S.C. Sections 1331 and 1343(a)(3), as this action arises under, and seeks redress for, the deprivation of rights secured by the ADA and Section 504. 42 U.S.C.A. § 12132; 29 U.S.C. § 794.

10. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because Defendants are doing business and/or are residents of this Judicial District, and the named Plaintiffs reside in this district.

## PARTIES

**PLAINTIFFS**

**A. Plaintiff Melvin Johnson**

11.    Melvin Johnson has been in DOCCS custody since 1995.

12.    Mr. Johnson is serving a 25 year to life sentence.

13.    Mr. Johnson has been housed in the Regional Medical Unit ("RMU") at Wende Correctional Facility ("Wende") since 2015.

14.    Mr. Johnson has colon cancer and degenerative disc disease which substantially limits one or more of his major life activities, including walking.

**B. Plaintiff Jamal Scott**

15.    Jamal Scott has been in DOCCS custody since 1997.

16.    Mr. Scott is serving a sentence of twenty to forty years.

17.    Mr. Scott has been in an RMU since 2010.

18.    Mr. Scott has paraplegia which substantially limits one or more of his major life activities, including walking.

**C. Plaintiff Armando Torres**

19.    Armando Torres has been in DOCCS custody since 1994.

20.    Mr. Torres is serving a sentence of twenty-six years to life.

21.    Mr. Torres has end stage renal disease which substantially limits one or more of his major life activities, including walking.

**DEFENDANTS**

22.    New York State is a public entity as defined by 42 U.S.C. § 12131(1)(A).

23.    New York State operates DOCCS.

24.    New York State is a recipient of federal funds.

25.    Defendant Governor Andrew M. Cuomo is the governor of the State of New York.

26.    Defendant Cuomo is responsible for ensuring that New York operates its services, programs and activities in conformity with Title II of the ADA and Section 504.

27.    Governor Cuomo is responsible for the executive branch of New York State government, which includes DOCCS.

28.    Governor Cuomo is vested with the powers to appoint subordinates and employees as necessary for the exercise of his powers as the head of the Executive Department, including appointing the Commission of DOCCS. *See*, Executive Law § 30.

29.    During Governor Cuomo's tenure, DOCCS has taken, and continues to take action that Plaintiffs complain of in this lawsuit.

30.    Governor Cuomo is sued in his official capacity.

31.    DOCCS is an agency of the State of New York.

32.    DOCCS is a public entity as defined by 42 U.S.C. § 1231(1)(B).

33.    DOCCS operates prison facilities for the State of New York.

34.    DOCCS provides programming services to DOCCS inmates.

35.    DOCCS is a recipient of federal funds.

36.    DOCCS maintains and operates Wende Correctional Facility's RMU, located at 3040 Wende Rd, Alden, NY 14004

37.    Defendant Anthony Annucci is the Acting Commissioner of DOCCS, with all the powers and duties set forth in N.Y. Correct. Law § 112 and otherwise prescribed by law, statutes, rules and regulations.

38.     Acting Commissioner Annucci is responsible for the operation and administration of DOCCS, including its planning, programs, and services for individuals with disabilities in New York State.

39.     Acting Commissioner Annucci is sued in his official capacity.

## LEGAL AND STATUTORY FRAMEWORK

40.     Title II of the ADA, 42 U.S.C. §§ 12131, 12132, prohibits discrimination against individuals with disabilities.

41.     Specifically, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42.     The implementing regulations of the ADA require that public entity must make an individualized assessment in determining if it is unsafe for an individual to participate in programming. 28 C.F.R. § 35.139.

43.     Section 504 (29 U.S.C. § 794) provides that no person with a disability, including those with intellectual and developmental disabilities, "shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

44.     Defendants' failure to make prison programs and services available to Plaintiffs deprives them of an equal opportunity to participate in and benefit from DOCCS programs and services.

## CLASS ALLEGATIONS

45.     The named Plaintiffs bring this class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a class consisting of: all individuals who are housed in an RMU who seek access to programs and services available to individuals housed in general population. ("Class Members"). See, FRCP 23(a)-(b)(2).

46.     Class Members have disabilities that substantially limit one or more major life activities.

47.     Class Members are inmates with disabilities who reside in RMUs.

48.     RMUs are housing units where all inmates have disabilities.

49.     RMU Class Members needed a higher level of medical care than inmates in general population.

50.     Defendant DOCCS is responsible for operating the RMUs by coordinating care and services to inmates placed in the RMUs.

51.     Defendant DOCCS is responsible for operating the prison system including providing programming and services within the prison setting to inmates.

52.     Due to Defendants' failure to provide equal access to programming, Class Members are unable to access programs and services within the prison setting.

53.      The class is so numerous that joinder of all members in one action would be impracticable and inefficient.

54.     Upon information and belief, the class consists of at least 40 members.

55.     Upon information and belief, all Class Members have limited financial resources to bring this claim against Defendants individually.

56.     There are questions of law and fact common to Plaintiffs and members of the class.  These questions include, but are not limited to:

a.      Whether Defendants are violating Mr. Johnson's, Mr. Torres', and Mr. Scott's rights under the ADA and Section 504 by failing to make reasonable modifications to its programs, policies and services so that they are available to class members;

b.      Whether Class Members have been or are being denied their civil rights to participate in, or benefit from, Defendants' services and programs due to Defendants' failure to make reasonable modifications to its programs, policies and services.

57.     The named Plaintiffs' claims are typical of the claims of the members of the class:

a.      Named Plaintiffs are all individuals with disabilities who reside in a RMU.

b.      Named Plaintiffs want to access programs and services of the Defendants' which are not available to RMU inmates.

c.      Class Members are individuals with disabilities who reside in a RMU.

d.      Class Members have sought or may seek access to programs and services within the DOCCS system which are not available to RMU residents.

58.     The named Plaintiffs' request for remedies of declaratory and injunctive relief will help all Class Members,  as it will require DOCCS to make reasonable modifications to allow RMU residents access to programming and services available to inmates in general population settings.

59.     The named Plaintiffs will fairly and adequately protect the interests of all members of the class because they have the requisite personal interest in the outcome of this

case, their interests are not antagonistic to those in the class, and they are represented by DRNY, a law firm experienced in complex class action litigation generally, and in litigation involving the rights of people with disabilities specifically.

60.    The named Plaintiffs' interests are not antagonistic to the Class Members.

61.    Class certification is appropriate pursuant to F.R.C.P 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Plaintiffs and the Class as a whole.

62.    Without a class action, Defendant will likely continue their policy and practice of denying Plaintiffs and the Class Members equal access to programming.

## FACTUAL ALLEGATIONS

### FACTS REGARDING THE NAMED PLAINTIFFS

**A.  Plaintiff Melvin Johnson**

63.    Mr. Johnson uses a wheelchair at all times.

64.    Mr. Johnson would utilize programming outside of the RMU if he was permitted to do so.

65.    Mr. Johnson is qualified for and desires access to programming outside the RMU, including the law library, religious services, and the recreation yard that is available to inmates housed in general population.

66.    Mr. Johnson has repeatedly requested access to programming outside of the RMU, including the law library, religious services, and the recreation yard that is available to inmates housed in general population.

67.    In the RMU, Mr. Johnson has been, and continues to be, denied access to programming outside of the RMU.

**B. Plaintiff Jamal Scott**

68.    Mr. Scott utilizes a wheelchair at all times.

69.    Mr. Scott would utilize programming outside of the RMU if he was permitted to.

70.    Mr. Scott is qualified for and desires access to the law library.

71.    Mr. Scott has repeatedly requested access to programming outside of the RMU, including the law library.

72.    In the RMU, Mr. Scott has been, and continues to be, denied access to programming outside of the RMU.

**C. Plaintiff Armando Torres**

73.    Mr. Torres utilizes a wheelchair.

74.    Mr. Torres would utilize programming outside of the RMU if he was permitted to.

75.    Mr. Torres is qualified for and desires access to programming outside of the RMU including, the law library, the general library, religious services, the recreation yard that is available to inmates housed in general population, the gym, and participation in festivals.

76.    Mr. Torres has repeatedly requested access to programming outside of the RMU, including the law library, the general library, religious services, the recreation yard that is available to inmates housed to general population, the gym, and participation in festivals.

77.    In the RMU, Mr. Torres has been, and continues to be, denied access to programming outside of the RMU.

## FACTS PERTAINING TO THE CLASS

**<u>Programming</u>**

78.    DOCCS operates five RMUs.

79.    The five RMUs operated by DOCCS are located at:

     a.      Wende Correctional Facility, 3040 Wende Rd, Alden, NY 14004;

     b.      Fishkill Correctional Facility, 18 Strack Dr, Beacon, NY 12508;

     c.      Bedford Hills Correctional Facility for Women, 247 Harris Rd, Bedford Hills, NY 10507;

     d.      Coxsackie Correctional Facility, 11260 U.S. 9W, Coxsackie, NY 12051; and

     e.      Mohawk Correctional Facility, 6514 NY-26, Rome, NY 13440.

80.     DOCCS provides physical access to law libraries at their correctional facilities for inmates housed in general population.

81.     RMU inmates are not provided physical access to the law library.

82.     Statewide, the only vocational programming offered to RMU inmates is "general business" and "computer operator."

83.     Inmates housed in general population are provided with a large variety of vocational programs, including Computer Operator, Telephone Customer Service, and Culinary Arts.

84.     RMU inmates are not given access to the college courses available to the inmates housed in general population.

85.     Other programs not available to inmates housed in the RMU that are available to inmates housed in general population include the incarcerated veterans program and the family reunion program.

86.     The family reunion program permits inmates to meet in a home-like setting with family members.

87.     Inmates housed in the RMU are not permitted to attend "festivals" held in the general population area.

88.     Festivals described in paragraph 86 include a Father's Day celebration during which children are permitted to visit their fathers and recreate with them in the recreation yard or in other recreational areas.

89.     No equivalent "festivals" are available to inmates housed in the RMU.

90.     The failure to provide RMU inmates equal access to programming is a violation of the ADA and Section 504.

91.     At Wende Correctional Facility, the following eleven programs are available to inmates housed in  general population:

       a.     Special Education;

       b.     Building Maintenance;

       c.     Custodial Maintenance;

       d.     General Business;

       e.     Plumbing and Heating;

       f.     Sex Offender Counseling and Treatment Program (SOCTP);

       g.     Family Reunion Program;

       h.     Alcoholics Anonymous/Narcotics Anonymous;

       i.     Alternatives for Violence Program (AVP);

       j.     Alcohol/Substance Abuse Treatment (ASAT); and

       k.     Integrated Dual Disorder Treatment (IDDT).

92.     Of the eleven programs available to inmates housed general population, only three of those are available to RMU inmates:

    a.      General Business;

    b.      SOCTP; and

    c.      ASAT.

93.    Fishkill Correctional Facility offers twenty-seven programs to inmates housed in the general population:

    a.      Metal Furniture Manufacturing;

    b.      Metal Shop;

    c.      College Programs;

    d.      Rising Hope, Inc. Program in Ministry and Human Services;

    e.      Building Maintenance;

    f.      Commercial Arts;

    g.      Computer Operator;

    h.      Electrical Trades;

    i.      Floor Covering;

    j.      General Business;

    k.      Horticulture;

    l.      Painting and Decorating;

    m.      Puppies Behind Bars;

    n.      Small Engine Repair;

    o.      SOCTP;

    p.      Incarcerated Veterans Program;

    q.      Family Reunion Program;

    r.      Family Services Programs;

      s.        Rehabilitation Through the Arts;

      t.        Volunteer Services;

      u.        Compadre Helper Program;

      v.        Waste Management;

      w.        Youth Assistance Program;

      x.        ASAT;

      y.        IDDT;

      z.        Special Housing Unit (SHU) Pre-Treatment Workbook Program; and

      aa.      Network Program

94.      Of the twenty-seven programs available, three are available to RMU inmates:

      a.        Computer Operator;

      b.        SOCTP; and

      c.        ASAT.

95.      Bedford Hills Correctional Facility has nineteen programs available to general population inmates:

      a.        Telephone Customer Service;

      b.        College Programs;

      c.        Special Education Program;

      d.        Computer Information Technology & Support;

      e.        Cosmetology;

      f.        General Business;

      g.        Horticulture;

      h.        Printing;

   i.  Puppies Behind Bars;

   j.  Family Reunion Program;

   k.  Family Services Program;

   l.  Alcoholics Anonymous;

   m.  Alternatives for Violence Project (AVP);

   n.  Rehabilitation Through the Arts;

   o.  Waste Management;

   p.  Youth Assistance Program;

   q.  ASAT;

   r.  IDDT; and

   s.  Dual Disorder Treatment (DDT).

96. Of the nineteen programs offered to inmates housed in general population, two are available to RMU inmates:

   a.  ASAT and

   b.  General Business.

97. Coxsackie Correctional Facility has eighteen programs available to general population inmates:

   a.  Garment Shop;

   b.  College Programs;

   c.  Special Education Program;

   d.  Building Maintenance;

   e.  Computer Operator;

   f.  Custodial Maintenance;

g.      Electrical Trades;

h.      Culinary Arts;

i.      Masonry;

j.      Painting & Decorating;

k.      Plumbing and Heating;

l.      Printing;

m.      Welding;

n.      Alcoholic Anonymous;

o.      Narcotics Anonymous;

p.      Family Services Program;

q.      Compadre Helper Program; and

r.      ASAT.

98.    Of the eighteen programs available to inmates housed in general population, two are available to RMU inmates:

a.      Computer Operator and

b.      ASAT

99.    Mohawk Correctional Facility offers sixteen programs to general population inmates:

a.      College Programs;

b.      Building Maintenance;

c.      Electrical Trades;

d.      Floor Covering;

e.      General Business;

      f.      Horticulture;

      g.      Masonry;

      h.      Painting & Decorating;

      i.      Plumbing and Heating;

      j.      Small Engine Repair;

      k.      Incarcerated Veterans Program;

      l.      SOCTP;

      m.      Hamilton Book Group;

      n.      Alcoholics Anonymous; and

      o.      ASAT

100.    Of the sixteen programs offered to inmates housed in general population , three are available to RMU inmates:

      a.      General Business;

      b.      SOCTP; and

      c.      ASAT.

101.    According to DOCCS' website, it offers an extensive array of programs and services for inmates, including educational and vocational training, substance abuse treatment, parenting skills, anger management, domestic violence counseling, health education, religious services, and others.

102.    Many RMU inmates could benefit from the programs from which they are excluded.

103.    All RMU inmates are prevented from participating in the programming available to inmates housed in general population.

104.    RMU inmates are not individually assessed to determine if it would be unsafe for them to attend these programs.

**Law Library**

105.    In addition to offering the programs listed above, DOCCS provides all inmates in the general population who are not on disciplinary status with physical access to the law library.

106.    DOCCS' law libraries include law books, an online research database, and law library clerks.

107.    Because inmates housed in RMUs are not permitted to access the law library, they have less opportunity to research legal matters they are pursuing, including criminal appeals and appeals of any misbehavior tickets they may have received.

108.    On information and belief, since DRNY first informed DOCCS that lack of law library access violates the ADA in 2015, one RMU inmate has been permitted to go to a law library.

109.    After intervention by DRNY, DOCCS issued a memorandum which stated that inmates housed in RMU may request to go to the law library.

110.    This Memorandum states that inmates who request to go to the law library would be assessed by a physician to see if they could go to the law library, with or without reasonable accommodations.

111.    However, at a meeting with DRNY and Wende C.F. staff on March 1, 2017, the nurse administrator for Wende's RMU stated that their physician only reviewed medical records and did not examine the individuals.

112.    The ban on physical access to the law library functions as a blanket ban without considering inmates differing disabilities.

**Special Events**

113.    DOCCS' facilities host special events in the general population area, such as Fathers' Day events, meetings of inmate organizations, and holiday celebrations.

114.    Inmates housed in the RMUs do not have access to these special events, and no equivalent events are held at the RMUs.

115.    The ban on attending special events is a blanket ban that bans RMU inmates regardless of their differing impairments.

116.    RMU inmates are not individually assessed to determine if it would be unsafe for them to attend events.

**Inmate Liaison Committee**

117.    At DOCCS' facilities there are Inmate Liaison Committees.

118.    This committee is comprised of four inmates who meet with the Superintendent, Deputy Superintendent for Security, Deputy Superintendent for Administration, Deputy Superintendent for Programs, Deputy Superintendent for Health, the Corrections Captain and the Corrections Sergeant.

119.    The meetings allow inmates to voice their concerns to the facilities' administrations.

120.    RMU Inmates are not individually assessed to see if it is unsafe for them to attend inmate liaison committee meetings.

121.    No equivalent Inmate Liaison Committee event is held at the RMUs.

**Recreational Areas at Wende RMU**

122.    The Inmate Liaison Committee at Wende requested that RMU inmates have access to the "ball field" (a recreational area).

123.    DOCCS responded that "it is not suitable to put medical inmates out into the ball field. This is a safety & security issue."

124.    No individualized assessment occurred, nor were any RMU inmates able to discuss this matter with the administration.

125.    Inmates in the Wende RMU have one outside recreation area, a parking lot.

126.    The parking lot is equipped with rusted weights and a wooden weight bench.

127.    Inmates and DRNY have requested that a universal weight machine be available to RMU inmates, so that they can engage in physical activity.

128.    The ADA Coordinator for DOCCS at the time of the request denied it "in accordance with the Department Directive No. 2614, 'Reasonable Accommodations for Inmates with Disabilities.'"

129.    No further explanation was provided other than "physical and recreational therapy services are available to inmates housed in the RMU, as needed. In addition, free weights can be handed to an inmate in a wheelchair by a fellow inmate or staff."

130.    DRNY contacted DOCCS both verbally and via email to address access to the universal weight machine, but did not receive any additional information.

131.    DRNY wrote to DOCCS counsel again on April 20, 2017, asking that DOCCS reconsider the denial of accessible equipment.

132.    DOCCS responded on May 15, 2017, again stating that inmates could use the weights in the RMU recreation area by having other inmates or staff pick weights up and hand them to the inmate.

**Access to General Populations Recreational Area**

133.    The recreational areas provided to inmates in the RMUs are inferior to those provided to general population inmates.

134.    General population inmates have access to large, grassy outdoor recreational areas where inmates can participate in organized sports.

135.    The outdoor recreation areas provided to RMU inmates are small, caged in, concrete areas.

136.    Because RMU inmates are not individually assessed to determine if it would be unsafe for them to utilize the general population's recreational area, the ban on RMU inmates utilizing general population's recreational area is a blanket ban.

**Religious Services**

137.    Inmates in the RMU are not permitted to attend the general population religious services.

138.    Inmates housed in general population are given the opportunity to practice their faith amongst and socialize with others who share their beliefs.

139.    Inmates housed in the RMUs are often only provided with one-on-one visits from leaders of their faith.

140.    Inmates in the RMU are denied the sense of faith-based community that general population inmates are afforded.

141.    Two observant Jewish inmates at Wende Correctional Facility reported to DRNY that a Rabbi does not visit inmates in the RMU.

142.    The ban on RMU inmates traveling to the general population's religious services area is a blanket ban.

143.    RMU inmates are not individually assessed to determine if it would be unsafe for them to participate in the general population's religious service meetings.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF TITLE II OF THE ADA

144.    DRNY re-alleges and incorporates herein all paragraphs of the Complaint.

145.    This claim is brought against all Defendants.

146.    The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity." 42 U.S.C. § 12133.

147.    A public entity must reasonably modify its policies, practices, or procedures to avoid discrimination in violation of the ADA.

148.    A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1) (A).

149.    The definition of disability must be construed in favor of broad coverage of individuals under the ADA. 42 U.S.C. § 12102(4) (A).

150.    Under the ADA, a qualified individual with a disability may not be subjected to discrimination for reason of their disability by any state entity or program receiving federal support. 42 U.S.C.A. § 12132.

151.    Defendant DOCCS is a public entity covered by Title II of the ADA. 42 U.S.C. §§ 12131(1) (A) and (B).

152.    Defendants Acting Commissioner Annucci and Governor Cuomo are responsible for the operation of public entities covered by Title II of the ADA.

153.     Plaintiffs Torres, Johnson, and Scott and Class Members are individuals with a disability that substantially limit one or more major life activity.

154.     Plaintiffs Torres, Johnson, and Scott and Class Members have disabilities within the meaning of 42 U.S.C. § 12131(2).

155.     Plaintiffs Torres, Johnson, and Scott and Class Members want to participate in programs and services that are currently only available to inmates housed in general population.

156.     Defendants have refused to make reasonable modifications to allow Plaintiffs and Class Members access to services and programs currently available only to inmates housed in general population settings.

157.     Defendants can reasonably accommodate Plaintiffs and Class Members by providing access to the programming available to general population inmates.

158.     Defendants can reasonably accommodate Plaintiffs and Class Members without any fundamental alteration to DOCCS' system and services.

159.     Defendants have failed to conduct an individualized assessment of Plaintiffs to determine if it is unsafe for Plaintiffs to attend general population programming as required under 28 C.F.R. § 35.139.

160.     Defendants have discriminated against Plaintiffs and Class Members by failing to make reasonable modifications to policies and programs that exclude inmates from RMUs from participating in programs and services available to inmates in general population settings.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF SECTION 504

161.     Plaintiffs repeat and re-allege the above paragraphs.

162.     This allegation is brought against all Defendants.

163.    Section 504 provides:

"No otherwise qualified individual with a disability in the United States . . . shall

solely by reason of her or his disability, be excluded from participation in, be

denied benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance." 29 U.S.C. § 794.

164.    Section 504 further provides that a:

"recipient may not, directly or through contractual or other arrangements, utilize

criteria or methods of administration: (i) That have the effect of subjecting

qualified handicapped persons to discrimination on the basis of handicap; [or] (ii)

That have the purpose or effect of defeating or substantially impairing

accomplishment of the objectives of the recipient's program or activity with

respect to handicapped persons . . . ." 45 C.F.R. § 84.4(b)(4).

165.    Public entities and recipients of Federal financial assistance must provide

qualified individuals with disabilities with meaningful access to their programs, services, and

activities.

166.    Defendants are recipients of Federal financial assistance.

167.    Defendants are obligated under Section 504 to administer New York State

programs and to utilize methods of administration in a manner that does not exclude the

availability of services and programs to individuals with disabilities.

168.    Plaintiffs Torres, Johnson, and Scott and Class Members are individuals with

disabilities that substantially limit one or more major life activity.

169.    Plaintiffs and Class Members are qualified individuals with disabilities within the

meaning of 29 U.S.C. § 705(20).

23

170.    Defendant Acting Commissioner Annucci and Governor Cuomo are responsible for the operation of public entities receiving federal assistance.

171.    Defendants have discriminated against Plaintiffs and Class Members by refusing to provide access to programs and services available to inmates housed in general population settings.

172.    Defendants provide programming and access to recreational areas, and allows participation in events, at all of its correctional facilities for inmates housed in general population.

173.    Defendants provide inmates housed in RMUs with inferior access to programming and recreational areas, and does not permit participation in general population events.

174.    Defendants' failure to provide inmates housed in RMUs with equal access to programming, recreational areas and events violates Section 504.

## RELIEF REQUESTED

WHEREFORE, DRNY requests that this Court grant the relief as set forth below:

1. Issue a declaratory judgment that the ongoing failure to provide inmates housed in the RMUs with access to programming, recreational areas, and events available to inmates housed in general population violates the ADA and Section 504;

2. Order Defendants to provide equal access or equivalent services for RMU inmates;

3. An award of reasonable attorneys' fees and costs; and

4.   Such other and further relief as the Court deems just and proper.

DATED:  Albany, New York

August 8, 2018

Respectfully submitted,

_____/s/_____

Megan Williams

_____/s/_____

Jessica Barlow

_____/s/_____

Simeon Goldman

Attorneys for Plaintiffs

DISABILITY RIGHTS NEW YORK
725 Broadway, Suite 450
Albany, NY 12207
Voice: 518-432-7861
Fax: 518-427-6561 (Not for Service)