UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

MELVIN JOHNSON, JAMAL SCOTT, and )
ARMANDO TORRES, individually and )
on behalf of all similarly situated individuals, )
)
      Plaintiffs, )
)
      v. )   Case No. 18-cv-6568-CCR
)
NEW YORK STATE DEPARTMENT OF )
CORRECTIONS AND COMMUNITY )
SUPERVISION, GOVERNOR ANDREW )
CUOMO, in his official capacity, ACTING )
COMISSIONER ANTHONY ANNUCCI, )
in his official capacity, and THE STATE OF )
NEW YORK, )
)
      Defendants. )

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**
(Doc. 21)

Plaintiffs Melvin Johnson, Jamal Scott, and Armando Torres (the "Named Plaintiffs") bring this putative class action suit against the New York State Department of Corrections and Community Supervision ("DOCCS"), the Governor of New York, the Acting Commissioner of DOCCS, and the State of New York (together, "Defendants") on behalf of themselves and other inmates with disabilities in DOCCS custody who are housed in Regional Medical Units ("RMUs").

The Named Plaintiffs allege that inmates housed in RMUs are deprived of the right to participate equally in prison programs, services, and activities because of their disabilities. They further allege that Defendants refuse to make "reasonable modifications, or even conduct individualized assessments" in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794. (Doc. 21-1 at 5.) In their

Complaint, the Named Plaintiffs seek a declaratory judgment, an injunction ordering DOCCS to provide "equal access or equivalent services for RMU inmates[,]" (Doc. 1. at 24), and an award of attorneys' fees and costs.

Before the court is the Named Plaintiffs' June 28, 2019 motion for class certification pursuant Federal Rules of Civil Procedure 23(a) and 23(b)(2) and appointment of class counsel under Rule 23(g). (Doc. 21). DOCCS opposed the motion on August 28, 2019. By agreement of the parties, the case was stayed from September 6, 2019 to November 1, 2019. On November 1, 2019, Plaintiffs replied in support of their motion. The court heard oral argument on March 5, 2020, at which time it took the motion under advisement.

The Named Plaintiffs are represented by Simeon L. Goldman, Esq. and Jessica Louise Barlow, Esq. Defendants are represented by Assistant Attorney General Gary M. Levine and Assistant Attorney General Matthew D. Brown.

## I.   Factual Background.

"[I]t is proper for a district court to accept the complaint allegations as true in a class certification motion[,]" *Waggoner v. Barclays PLC*, 875 F.3d 79, 85 n.5 (2d Cir. 2017), and it may also "consider material outside the pleadings in determining whether to certify the proposed class, including affidavits." *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005) (footnote omitted).

DOCCS operates five RMUs located at Wende Correctional Facility ("Wende"), Fishkill Correctional Facility, Bedford Hills Correctional Facility, Coxsackie Correctional Facility, and Mohawk Correctional Facility (collectively, the "Facilities"). RMUs are housing units that provide twenty-four-hour medical care for inmates who do not require hospitalization, but need "more complex and specialized care than can be provided" in general population housing. (Doc. 21-1 at 5.) The Named Plaintiffs allege that inmates are housed in RMUs when, "because of their medical condition(s), [they] require assistance with activities of daily living and skilled nursing and medical intervention on a regular basis." *Id.* at 11 n.1. Based on this criterion, the Named Plaintiffs contend that all RMU inmates qualify as disabled under the ADA, which

2

defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual[.]" 42 U.S.C. § 12102(1)(A). Each Named Plaintiff uses a wheelchair due to his respective disabilities, and each alleges that he would use and has sought access to programming outside the RMU but those requests have been denied. As of April 2019, the number of inmates housed in RMUs at the Facilities totaled 330, with a potential maximum of 382 inmates if all RMUs were filled to capacity. (*See* Doc. 21-2 at 46.)

DOCCS offers programming and services to inmates "including educational and vocational training, substance abuse treatment, parenting skills, anger management, domestic violence counseling, health education, religious services, and others." (Doc. 21-1 at 6.) The Named Plaintiffs allege that these programs and services are not equally available to inmates in the RMU, and that "access is often vastly inferior to that enjoyed by general population inmates." *Id.* at 12. For example, at the Facilities, DOCCS offers thirty-three programs to general population inmates, but only fourteen of those programs are open to RMU inmates. Among the programs and services to which RMU inmates have limited access are the law library, special events, participation on the inmate liaison committee, and religious services. While RMU inmates are nominally permitted to apply to attend general population programming, such requests are allegedly only granted in exceptionally rare circumstances. In addition, DOCCS allegedly fails to evaluate RMU inmates who request access to general population services on an individualized basis to determine whether their safe participation in proposed activities is feasible.

Plaintiff Johnson has been in DOCCS custody since 1995, serving a sentence of twenty-five years to life. He suffers from colon cancer and degenerative disc disease. Because of his disabling conditions, Plaintiff Johnson has been housed in the Wende RMU since 2015.

Plaintiff Scott has been in DOCCS custody since 1997, serving a sentence of twenty to forty years. Because he has paraplegia, Plaintiff Scott has been housed in an RMU since 2010.

3

Plaintiff Torres has been in DOCCS custody since 1994, serving a sentence of twenty-six years to life. Plaintiff Torres has end-stage renal disease. Although the Complaint does not allege that Plaintiff Torres is a current or former RMU resident, Defendants concede that Plaintiff Torres filed two grievances concerning access to programs and services for inmates in the RMU. (*See* Doc. 28-1 at 1) ("Armando Torres filed two grievances relating to the lawsuit before the [c]ourt: 'No Jewish [s]ervices in RMU' and 'RMU to [l]aw [l]ibrary.'").

DOCCS notes that only Plaintiff Scott currently resides in the Wende RMU. In contrast, Plaintiffs Johnson and Torres previously resided in the Wende RMU, but were both housed at Five Points Correctional Facility as of August 28, 2019. Although DOCCS additionally asserts that only Plaintiff Torres pursued administrative relief by filing a grievance after being denied access to services because of his RMU-resident status while at Wende, the Named Plaintiffs have submitted the grievances filed by Plaintiffs Johnson and Scott. (*See* Doc. 32-1 at 3-8) (documenting grievance by Plaintiff Johnson regarding physical access to the law library at Wende); *id.* at 10-14 (reflecting Plaintiff Scott's grievances regarding access to honor block, exercise equipment, physical access to the law library, and restroom facilities).

In support of its opposition to class certification, DOCCS cites "Facility Operation Manuals" (the "Policies") that instruct Facility personnel regarding procedures governing medical provider assessments of inmates who seek to participate in programs or services outside of the RMUs, including Policies for all five Facilities dated June 2019, as well as earlier versions of the Policies for Wende dated August 2015 and June 2017. (*See* Doc. 28 at 12, 20, 28, 36, 45, 52, 59).

In their Complaint, the Named Plaintiffs describe the proposed class as "all individuals who are housed in an RMU who seek access to programs and services available to individuals housed in general population." (Doc. 1 at 6.) However, in their motion for class certification, the Named Plaintiffs suggest an expanded class definition that would also include inmates "who have disabilities that place them at risk of entering or returning to [RMUs] during their incarceration." (Doc. 21-1 at 5.) At the court's class

4

certification hearing, the Named Plaintiffs agreed that the proposed class may be further modified as follows: "all individuals housed in an RMU from six months prior to the filing of the Complaint through the date the Complaint was filed."

Plaintiffs are represented by Disability Rights New York ("DRNY"), "the federally authorized Protection and Advocacy System for people with disabilities in New York[.]" (Doc. 21-1 at 17.) Although Plaintiffs' counsel, Jessica L. Barlow, Esq., has not previously served as lead counsel in a class action lawsuit, she will be assisted by counsel who have done so. Both Attorney Barlow and her co-counsel are experienced in disability litigation and have independent knowledge and special expertise which render them amply able to provide adequate representation to the putative class.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Federal Rule of Civil Procedure 23(a) requires that a plaintiff seeking to bring suit on behalf of a class demonstrate that the following requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are referred to as the requirements of "numerosity, commonality, typicality, and adequacy." *Davis v. City of New York*, 296 F.R.D. 158, 163 (S.D.N.Y. 2013). Where the conditions set forth in Rule 23(a) are satisfied, "[a] class action may be maintained" if one of the three circumstances specified in Rule 23(b) applies. Fed. R. Civ. P. 23(b). Pursuant to Rule 23(b), a class action may be appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

In addition to the requirements of Rule 23, the Second Circuit has recognized "an implied requirement of ascertainability" for class action certification to ensure that the proposed class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks and citation omitted). Ascertainability does not impose a "freestanding administrative feasibility requirement[,]" but rather demands "only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017). "This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269.

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). While a district court must make factual determinations necessary to ascertain whether the requirements of Rule 23 have been met on class certification, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement[.]" *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). "Rule 23 is given liberal rather than restrictive construction," *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997), and there is a "general preference" for granting class certification where it is "the method best suited to adjudication of the controversy fairly and efficiently." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 528 (E.D.N.Y. 2017) (internal quotation marks and citations omitted).

### B. Whether the Requirements of Rule 23(a) Are Satisfied.

#### 1. Numerosity.

To satisfy the numerosity requirement, "the difficulty or inconvenience of joining all members of the class" must "make use of the class action appropriate." *Guadagna v. Zucker*, 332 F.R.D. 86, 92 (E.D.N.Y. 2019) (quoting *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45

6

(2d Cir. 2007)). Numerosity for class certification purposes "'is presumed where a putative class has forty or more members.'" *Id.* (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011)).

Defendants assert that Plaintiffs' proposed class definition is overly broad because it includes inmates who are "not being discriminated against" as they are "too sick to use the services and activities, nor have they sought to use any services and activities." (Doc. 28-1 at 6.) They ask the court to limit the class by adding a condition that class members be "physically and mentally able to avail themselves of DOCCS programs and services not offered to RMU inmates[,]" or, alternatively, a condition that class members must have "requested and have been denied" access to DOCCS programs and services. *Id.* According to Defendants, if the court imposes one or both of those conditions, the putative class will not be sufficiently numerous to warrant class certification. If the class is limited to residents of Wende's RMU, as Defendants contend it should be, it, too, would not satisfy the numerosity requirement.

Imposing a condition that all class members must have requested and been denied access to programs would conflict with the rule that only one plaintiff needs to exhaust his administrative remedies in accordance with the efficiency objectives of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e). *See Barfield v. Cook*, 2019 WL 3562021, at *7 (D. Conn. Aug. 6, 2019) (finding that the PLRA's aims of reducing the volume and improving the quality of prisoner suits are preserved when a single plaintiff in a class action has exhausted his administrative remedies). Courts have found that "[i]n the class action context . . . the PLRA's exhaustion requirement is satisfied as long as at least one member of the proposed prisoner class has exhausted applicable remedies." *Id.*; *see, e.g., Butler v. Suffolk Cty.*, 289 F.R.D. 80, 97 (E.D.N.Y. 2013) (finding that exhaustion of administrative remedies by all proposed class members "is irrelevant to the class certification analysis" where class representatives met exhaustion requirement of PLRA); *Lewis v. Washington*, 265 F. Supp. 2d 939, 942 (N.D. Ill. 2003) (finding the PLRA's aims of "affording prison officials an opportunity to address complaints internally is met when one plaintiff in a class action has exhausted his administrative

7

remedies"). Defendants do not dispute that at least one Named Plaintiff exhausted his administrative remedies prior to filing this lawsuit.[1]

Defendants' second proposed condition, excluding any RMU inmates who "are not being discriminated against," would impermissibly require the court to adjudicate the merits of the claims of each individual prospective class member prior to class certification. This is neither required nor advisable. *See Guadagna*, 332 F.R.D. at 93 (rejecting defendant's request that the court "decide . . . the merits of each putative class member's claim, and then determine whether the class is sufficiently numerous based on the number of surviving claims").

Rather than functioning as a simple arithmetic test, "'the numerosity inquiry . . . must take into account the context of the particular case,' including 'the financial resources of class member[s]' and 'their ability to sue separately.'" *J.B. v. Onondaga Cty.*, 401 F. Supp. 3d 320, 331 (N.D.N.Y. 2019) (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) and finding plaintiffs' incarceration supported numerosity for class certification). In this case, the prospective class members' incarcerated status weighs in favor of finding numerosity as class certification will enable them to pursue individual and class relief that might otherwise be unavailable in its absence.

On balance, because Plaintiffs' proposed class is expected to exceed three hundred individuals and will maximize the financial resources of the class members and their access to justice, it satisfies the numerosity requirement. *See Shahriar*, 659 F.3d at 252 (affirming district court's finding that numerosity was satisfied with class of approximately 275).

### 2. Commonality.

The "commonality" requirement demands that class representatives "demonstrate that the class members have suffered the same injury[.]" *Wal-Mart Stores, Inc. v. Dukes*,

---

[1] At the March 5, 2020 hearing, Defendants requested an opportunity to submit supplemental briefing concerning the PLRA's exhaustion requirements. The court granted the parties two weeks to address the issue, but no supplemental briefs were filed.

8

564 U.S. 338, 350 (2011) (internal quotation marks and citation omitted). This relatively lenient standard "is met so long as there is at least one issue common to the class." *Raymond v. Rowland*, 220 F.R.D. 173, 179 (D. Conn. 2004) (citation omitted). "'Even a single common legal or factual question will suffice to prove commonality[,]'" *Guadagna*, 332 F.R.D. at 93 (internal quotation marks omitted) (quoting *In re Payment Card Litig.*, 330 F.R.D. 11, 52 (E.D.N.Y. 2019)), and those common questions are generally present where "the same conduct or practice by the same defendant[s] gives rise to the same kind of claims from all class members[.]" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and citation omitted).

The Named Plaintiffs assert that RMU residents have been "denied opportunities for education, recreation, worship and other activities available to inmates in general population" on the basis of their disabilities and pursuant to a DOCCS practice of failing to provide individualized assessments to inmates who request access to programs and services. (Doc. 21-1 at 11.) Defendants counter that there is no remaining common question because "DOCCS now has in place at each RMU a policy that each inmate will have an individualized assessment for programs, services and activities." (Doc. 28-1 at 7.) According to Defendants, the Named Plaintiffs have "failed to bridge the conceptual gap" between their claims and the assertion of classwide injury because they have not presented evidence of discrimination at Facilities other than Wende. *Id.* at 8.[2]

The Named Plaintiffs raise two questions common to all RMU inmates: whether DOCCS offers RMU residents equal access to programs and services, and whether DOCCS provides individualized assessments to determine whether RMU inmates may safely access general population programs and services. These issues of fact are common to all class members, as the Named Plaintiffs "are challenging acts and omissions of

---

[2] The earliest Policy before the court providing for individual assessment of RMU residents seeking to access programming at Wende is dated August 3, 2015. Although the Policy states that it supersedes "FOM 3203 dated 1/3/2013[,]" (Doc. 28 at 28), Defendants did not submit the 2013 Policy as an exhibit.

9

[DOCCS] that are not specific to any particular [class member]." *Raymond*, 220 F.R.D. at 180.

Although the Named Plaintiffs do not allege firsthand knowledge of Facilities other than Wende, there is circumstantial evidence that other Facilities have not fulfilled their federal statutory obligations to disabled inmates. The Policies produced by DOCCS indicate that prior to 2019, Wende was the only Facility with a written policy requiring that RMU inmates be individually assessed to determine whether they could safely access general population programs and services. The absence of a written policy for any of the other Facilities prior to 2019 supports a reasonable inference that such policies did not exist. *See Williams v. Conway*, 312 F.R.D. 248, 253 (N.D.N.Y. 2016) (finding evidence that defendants "may have implemented improvements in providing services" for disabled detainees did not establish "whether those improvements actually rectify the alleged inadequacies"). Moreover, the mere existence of a Policy does not necessitate a conclusion that it is routinely enforced. By challenging both whether and how RMU inmates access DOCCS programs and services, the Named Plaintiffs have shown by a preponderance of the evidence that their claims involve questions common to all class members that outweigh any individualized determinations.

### 3.     Typicality.

Representative claims satisfy the "typicality" requirement if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 504 F.3d at 245. The typicality requirement "is usually met irrespective of minor variations in the fact patterns underlying individual claims" when "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be presented[,]" *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993), including where "the representative plaintiffs are subject to the same policies as the putative class members." *Raymond*, 220 F.R.D. at 180. Where "all members of the class would benefit from the named plaintiffs' action[,]" the named plaintiffs' claims are sufficiently typical. *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 201 F.R.D. 326, 332

10

(S.D.N.Y. 2001). However, where a class representative is subject to unique defenses that could overwhelm the common issues in the case, class certification is "inappropriate[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000).

Defendants argue that individualized determinations for each inmate predominate and substantially outweigh the issues common to the proposed class. However, this misconstrues the nature of the Named Plaintiffs' claim. They do not appeal the denial of their individual requests to access services, but rather challenge the legality of DOCCS's systemic policy of denying access and failing to provide individualized assessments. *See Guadagna*, 332 F.R.D. at 94 (noting that defendants "mischaracterize[d]" the plaintiff's challenge, which was to "the lawfulness of [defendant's] overarching policy"). The Named Plaintiffs' claims thus "arise from the same conduct by Defendants" pursuant to "blanket policies[,]" (Doc. 21-1 at 14), and their claims are typical of the class members' claims.

### 4. Adequacy of Class Representatives.

A class representative can adequately represent the proposed class if he or she has "an interest in vigorously pursuing the claims of the class" and has "no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (citation omitted). The Named Plaintiffs assert they have no actual or potential conflict of interest with the putative class members, with whom they allege their interests are "entirely coextensive." (Doc. 21-1 at 15.) They seek no individualized relief and "do not have interests antagonistic to the interests of the members of the class, in that they have been subject to the same deprivation as the absent class members and are only seeking enforcement of federal law in a manner that would benefit all members of the class equally." *Raymond*, 220 F.R.D. at 180.

Although it appears that Plaintiffs Johnson and Torres do not currently reside in a Facility RMU, their current residential assignments do not prevent them from adequately representing the interests of the class in light of the possibility that they will be housed at a Facility RMU in the future. For example, Plaintiff Scott has, at various times, resided

11

in four of the five RMUs at issue in this litigation (excluding one at an all-female Facility). "'[A]n individual plaintiff may continue to represent the interests of others even after any prospect of individual recovery has vanished'" in a class action case. *Barfield*, 2019 WL 3562021, at *6 (quoting *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994)). As a result, the Named Plaintiffs each have adequate incentives to diligently prosecute this case on behalf of the class. *See Williams*, 312 F.R.D. at 254 (opining "[t]hat [p]laintiff's personal claims may be moot is inconsequential to" a request for prospective injunctive relief benefitting all class members and holding that "[t]he fact that [p]laintiff is no longer incarcerated does not defeat adequacy"). The Named Plaintiffs have thus established that they will adequately represent the interests of the class.

### 5. Adequacy of Class Counsel.

The adequacy requirement also applies to class counsel, who must be "'qualified, experienced, and able to conduct the litigation.'" *Basso v. New York Univ.*, 363 F. Supp. 3d 413, 423 (S.D.N.Y. 2019) (quoting *Baffa*, 222 F.3d at 60). Rule 23(g) requires that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel" and instructs the court to take the following factors into consideration in making that appointment:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g). The court additionally "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" *Id.*

DRNY, which represents the Named Plaintiffs, has extensive experience with disability rights litigation and has been working with RMU inmates seeking equal access since 2015. In addition, although Defendants initially questioned whether the Named Plaintiffs' counsel were sufficiently experienced in class action litigation to prosecute this case, the lead attorneys for the Named Plaintiffs have a combined thirty-six years of

12

experience litigating complex cases in federal court with a particular focus on the ADA and § 504. Proposed class counsel has already conducted discovery and has identified the factual and legal basis for the Named Plaintiffs' claims. They have further demonstrated a commitment to expend the time and resources necessary to fully litigate the class claims. There is no apparent conflict of interest that would impair their representation. For the foregoing reasons, the Named Plaintiffs' motion to appoint DRNY as class counsel is GRANTED.

### C. Whether Certification is Warranted Pursuant to Rule 23(b)(2).

Plaintiffs assert their claims are suitable for class action in accordance with Rule 23(b)(2), which authorizes class actions when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). In affirming a district court's decision to certify a class based on the alleged failure of New York City's child welfare system to comply with its constitutional and statutory obligations, the Second Circuit observed that "civil rights cases seeking broad declaratory or injunctive relief for a large and amorphous class fall squarely into the category of [Rule] 23(b)(2) actions[.]" *Marisol A.*, 126 F.3d at 378 (internal alterations, quotation marks, and citation omitted); *see also Wal-Mart Stores, Inc.*, 564 U.S. at 361 (noting that "civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what [Rule 23](b)(2) is meant to capture") (internal quotation marks, brackets, and citation omitted).

Lawsuits, such as this one, "alleging systemic failure of governmental bodies to properly fulfill statutory requirements" are "appropriate for class certification under Rule 23(b)(2)[,]" *Raymond*, 220 F.R.D. at 181 (citing *Brown v. Giuliani*, 158 F.R.D. 251, 269 (E.D.N.Y. 1994)), and "it is not uncommon for courts to order defendants to ensure compliance with statutory obligations providing for accessibility[.]" *Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 300 (S.D.N.Y. 2019) (finding defendants' alleged "institutional" failure to act was susceptible to

injunctive relief as required by Rule 23(b)(2)). The Named Plaintiffs' claims and the relief they seek therefore satisfy the requirements of Rule 23(b)(2).

Although Defendants emphasize that DOCCS has now implemented a policy requiring individualized assessments to determine whether RMU inmates may safely access programs and services in the Facilities,[3] Plaintiffs point out that such a policy was in place at Wende as of at least 2015 and was ineffective in ensuring equal access for RMU inmates to programs and services. Accordingly, "[t]his is not a case where withdrawal of the challenged action or non-enforcement of the challenged statute renders class certification unnecessary." *Davis*, 296 F.R.D. at 168 (internal quotation marks, citation, and footnote omitted).

### D.    Whether the Class is Sufficiently Ascertainable.

A class is sufficiently ascertainable to warrant certification when it is "defined by objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 269. Courts considering class certification motions have "broad discretion" to "alter or modify the class, create subclasses, and decertify the class wherever warranted." *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001); *see also Barfield*, 2019 WL 3562021, at *8-9 (granting class certification but modifying class definition to address meritorious objection by defendants). In the exercise of that broad discretion and in recognition of the factors weighing in favor of granting class certification in this case, the court hereby MODIFIES the class definition as follows:

---

[3] Defendants cite *Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973), in support of their argument that class certification is not "necessary" because any "decision of this [c]ourt . . . will bind the actions of DOCCS in all RMUs[.]" (Doc. 28-1 at 3-4.) The principle that class certification may be denied as unnecessary to protect the class applies only "where purely prohibitory relief is sought." *Cutler v. Perales*, 128 F.R.D. 39, 46 (S.D.N.Y. 1989). Because the Named Plaintiffs "seek relief that would require defendants to take affirmative steps to remedy existing unconstitutional conditions . . . and to implement standards that comport with the mandates of federal . . . laws and regulations[,]" *Jane B. by Martin v. N.Y.C. Dep't of Soc. Servs.*, 117 F.R.D. 64, 72 (S.D.N.Y. 1987) (internal citations omitted), class certification remains appropriate.

All incarcerated individuals with disabilities who were housed in the RMU at any Facility between February 8, 2018 and August 8, 2018, the date of filing of the Named Plaintiffs' Complaint.

For the reasons stated above, the Named Plaintiffs have shown by a preponderance of the evidence that the requirements of Rules 23(a) and 23(b)(2) are met. With the class definition modified to ensure that the members may be identified based upon manageable, objective criteria, class certification is warranted. The court therefore GRANTS the Named Plaintiffs' motion to certify the class subject to the revised class definition.

## CONCLUSION

For the foregoing reasons, the court GRANTS the Named Plaintiffs' motion for class certification subject to the modified class definition set forth above and GRANTS the Named Plaintiffs' request to appoint class counsel. (Doc. 21.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 19th day of May, 2020.

Christina Reiss, District Judge
United States District Court